FILED
2025 Jul-08  PM 01:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JOSHUA PHILLIPS.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:22-cv-987-LCB** |
| | ) | |
| **CITY OF HANCEVILLE,** | ) | |
| **ALABAMA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

In 2022, Joshua Phillips sued the City of Hanceville and 3 Hanceville law enforcement officers, Investigator Josh Howell, Sergeant Kyle Duncan, and Deputy Police Chief Adam Hadder. Doc. 1. Phillips' complaint alleges that his constitutional rights were violated by his arrest for disorderly conduct. After exchanging discovery, the Defendants moved for summary judgment last year. Because there was probable cause to arrest Phillips and the force used during his arrest was reasonable, the Court WILL GRANT the Defendants' motions for summary judgment, Docs. 31, 32, and WILL DISMISS the case WITH PREJUDICE.

1

## I.    BACKGROUND

### A.    Undisputed Facts

On August 26, 2020, Plaintiff Joshua Phillips was stopped at a public safety roadblock conducted by the Hanceville Police Department (HPD). Doc. 34-4 at 58. Phillips was stopped at the roadblock and refused to provide identification. *Id.* at 64. Phillips does not dispute that although he had a child in the backseat of the car, and a rifle was visible on the passenger seat during the encounter, he was allowed to leave after officers verified that he had a valid driver's license. *See also Roadblock Bodycam Footage*, Doc. 34-7 (filed conventionally). Defendants Howell and Duncan were both present at the roadblock. Doc. 34-4 at 60.

As often happens in small towns, Phillips encountered Investigator Howell at Dale's Convenience Store about two weeks later, September 8. Doc. 34-2 at 11. Howell was off duty at the time, Doc. 34-4 at 95, and a tense verbal exchange occurred between Phillips and Howell. Doc. 34-3 at 31-32. Sergeant Duncan, who was on duty, was present inside the store. Doc. 34-4 at 95. The exchange continued inside the convenience store, where Phillips also engaged Duncan. *Id.* Phillips then left the convenience store and went to the Hanceville Police Department to make a complaint about Howell. Doc. 34-2 at 9. Officers Duncan and Howell responded to the police department after HPD dispatch informed them that Phillips was there. Doc. 34-4 at 101-02.

2

What happened next is not in dispute because the entire incident was captured on the police department's security cameras and Officer Duncan's body camera. After arriving at the Hanceville police department, Phillips was buzzed into a secured hallway and spoke with someone behind the dispatcher window. *Combined Video Footage*, at 0:00:02–0:00:34.[1] He then paced the hallway briefly before sitting down on a bench. *Id.* at 0:01:36.

A few minutes later, Officers Kyle Duncan and Josh Howell arrived at the station, and Officer Duncan activated his body-worn camera as he walked into the building. *Id.* at 0:05:04. Although Duncan first greeted Phillips, a conversation between Howell and Phillips escalated into a heated argument within seconds. *Id.* at 0:05:15. Duncan tried to verbally de-escalate the conflict, instructing both Howell and Phillips to "hold up real quick." *Id.* at 0:06:10. Phillips reiterated his demand that someone take a written report about Howell, *Id.* at 0:06:45, and eventually clarified that his complaint stemmed from Howell telling him to leave convenience store property despite not being in uniform. *Id.* at 0:07:05.

As the argument began to escalate again, Phillips stood up and moved toward Howell. *Id.* at 0:08:27. Duncan interjected, calling the exchange "a pointless argument" and prompting Phillips to sit back down. *Id.* at 0:08:37. After another minute of belligerent argument between Phillips and Howell, Duncan

---

[1] This footage was conventionally filed by Defendants. *See* Doc. 34.

3

declared, "Alright, we're done, go ahead and leave" and quickly repeated the command. *Id.* at 0:09:48.

Phillips was then repeatedly instructed to leave the premises. Shortly after the first two warnings, Duncan told Phillips: "You're going to leave or I'm going to arrest you for disorderly conduct." *Id.* at 0:09:53. That statement was followed by multiple commands to "Get out of the police department," *id.* at 0:09:55, 0:09:58, an emphatic "Get out of the police department," *id.* at 0:09:59, and finally, simply "Get out." *Id.* at 0:10:01. Phillips ignored these commands, and instead stood up and walked toward the dispatcher window, prompting Duncan to repeat the command three more times: "Get out," "Get out," and "One more time, get out." *Id.* at 0:10:01-0:10:06. At the same time, Officer Howell left the hallway through an exit door into the dispatch office. *Id.* at 0:10:09.

A clearly (and understandably) frustrated Officer Duncan then told Phillips to "get out or I'm gonna snatch you up." *Id.* at 0:10:10. Phillips responded, "You're going to snatch me up?" to which Duncan replied, "Fuck yeah I am, get the fuck out, dude." (0:10:10–13). After that exchange, Phillips turned in the direction he came from—presumably one of the building's exits—and began to move in that direction, while Duncan followed him, again stating: "Let's go, man. Come on, dude." *Id.* at 0:10:12. While moving away from the camera, Duncan placed his open left hand on Phillips' back, prompting Phillips to turn and confront

4

him. *Id.* at 0:10:15. At that same moment, Officer Howell re-entered the hallway, as seen on Duncan's bodycam footage. *Id.* at 0:10:16. With his hand still on Phillips' back, Duncan began steering him toward the exit, saying, "Let's go, let's go." *Id.* at 0:10:16. After a few steps, Phillips planted his feet in front of the dispatcher window and loudly exclaimed, "Don't touch me, don't fucking touch me," while pivoting around to face Duncan with balled fists. *Id.* at 0:10:18.

Duncan responded by wrapping his right arm around Phillips' neck, while Howell moved in from the doorway to restrain Phillips' arms. *Id.* at 0:10:21. As Howell tried to secure Phillips' arms, Duncan pulled him to the ground, maintaining a hold around his neck. *Id.* at 0:10:23. Once on the ground, Phillips shouted, "I ain't done nothin', motherfuckers." *Id.* at 0:10:25. While Howell was able to maintain his grip, Phillips pushed Duncan off him. *Id.* at 0:10:31. Duncan quickly reengaged, pinning Phillips' right arm behind his back, while Phillips continued shouting: "I ain't done nothin'," "Y'all want force back? I can give you force back," and "Get off my back." *Id.* at 0:10:33-0:10:42.

Phillips was given repeated commands to place his hands behind his back but continued to resist. *Id.* at 0:10:49-0:11:02. Despite attempts to subdue Phillips by Duncan and Howell, along with a third officer, Phillips got back on his feet. *Id.* at 0:11:07-0:11:16. Duncan then lifted Phillips off the ground with both arms, at which point his body camera feed cut out. *Id.* at 0:11:21. After that, it took all three

officers another twenty seconds to get Phillips' hands behind his back and handcuff him. *Id.* at 0:11:41-0:12:01.

Once handcuffed, Phillips was pushed up against the wall. *Id.* at 0:12:10. When Phillips turned his head and torso to say something to Howell, Howell responded by placing a hand on his shoulder, shoving him back to face the wall, and then pushing Phillips shoulder forcefully into the wall. *Id.* at 0:12:27. Phillips was escorted out of the hallway moments later. *Id.* at 0:13:19.

Footage of the incident stops there, because footage of the booking area was erased as part of routine police department procedure. At any rate, there is no dispute that although Deputy Chief Adam Hadder was not present during the initial altercation and arrest, Hadder interacted with Phillips later in the booking area. A few hours after his arrest, Hadder retrieved Phillips from his cell for booking. Doc. 34-2 at 75. While being fingerprinted, Phillips stated: "[T]his ain't right. I can't believe I'm giving y'all all my information, and I haven't even committed a crime." The parties do not agree about what happened next. Phillips claims Hadder assaulted him, which Hadder denies. Doc. 34-5 at 31-32. Phillips was ultimately charged with disorderly conduct and resisting arrest, but the charges were later *nolle prossed*. Doc. 48-1. [2]

---

[2] The Court notes that a *nolle pros* or acquittal of charges is irrelevant here because that disposition "is not determinative of the issue of whether [the] arresting officer or officers had probable cause to arrest" Phillips. *Holland v. McDonald*, 2007 WL 9751833, at *2 (N.D. Ala.).

### B.    Procedural History

On August 7, 2022, Phillips brought this § 1983 claim against the City of Hanceville and the individual defendants, alleging false arrest, excessive force, and retaliatory arrest in violation of his constitutional rights. Doc. 1. One year later, the Court denied Phillips' request to file an amended complaint because his motion "ma[de] no mention of any good cause that might support his motion" as required by Fed. R. Civ. P. 16(b). Doc. 22 at 1-2. After discovery concluded, Defendants moved for summary judgment on March 25, 2024, and the Court heard oral arguments on the motions on August 29, 2024.

## II.    SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure dictate that "summary judgment is appropriate where the pleadings, affidavits, depositions, admissions, and the like 'show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (cleaned up and quoting Fed. R. Civ. P. 56(a)).

Ordinarily, "a party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Burger King Corp. v. E-Z Eating*,

*41 Corp.*, 572 F.3d 1306, 1313 (11th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Further, courts must "constru[e] the evidence and all reasonable inferences therefrom in favor of the nonmoving party." *Urquilla-Diaz*, 780 F.3d at 1050. Even so, the nonmovant can't survive summary judgment unless it "offer[s] more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Id.*

## III.  ANALYSIS

In broad strokes, the individual Defendants (Duncan, Howell, and Hadder) argue that they are entitled to summary judgment because they have qualified immunity. Specifically, they argue that there was probable cause to arrest Phillips for disorderly conduct, and that the force used during the arrest was objectively reasonable. And the City of Hanceville says summary judgment is appropriate because Phillips has failed to show a policy or custom sufficient to create municipal liability.

Phillips disagrees, on the basis that the officers failed to deescalate the arrest. As to the excessive force claim against Deputy Chief Hadder, Phillips says that there is a remaining dispute of material fact as to whether the alleged use of force happened in the first place. The Court is not persuaded.

8

Because video evidence of the arrest shows that the officers had probable cause to arrest Phillips, and Phillips has not alleged any action by Deputy Chief Hadder that rises to the level of excessive force, the individual Defendants are entitled to qualified immunity. The Court also finds that municipal liability cannot exist without an underlying constitutional violation, and that Phillips has failed to show the existence of a policy or custom that would have caused the alleged violations. As a result, the Court WILL GRANT Defendants' motions for summary judgment.

## A.    The qualified immunity framework

In civil actions brought under § 1983, qualified immunity "offers complete protection" for police officers so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This doctrine "allow[s] officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) (cleaned up); *see Pearson*, 555 U.S. at 231 (observing that "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they

exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.").

To begin, the shield of qualified immunity can be raised only when a police officer's challenged conduct is a "discretionary function" performed in his official capacity. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Once the discretionary function requirement is satisfied, courts move on to a two-pronged inquiry. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). The first prong requires the court to determine whether the facts, "taken in the light most favorable to the [Plaintiff,] show the officer's conduct violated a federal right." *Id.* If the court finds that the first prong is satisfied, then the court must determine "whether the right in question was clearly established at the time of the violation." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Because Phillips does not dispute that the individual defendants were performing discretionary functions when they arrested and booked him, Phillips bears the burden of satisfying both prongs of the qualified immunity analysis. *Ashcroft*, 563 U.S. at 743.[3]

---

[3] Phillips asserts in his response that the individual Defendants are not entitled to "discretionary function immunity" under Alabama law. Doc. 53 at 25-26 (citing *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)). But Defendants have not raised *Cranman* immunity as a defense.

**B.    Defendants Are Entitled to Summary Judgment on Phillips' False Arrest Claim**

The Complaint alleges that Officers Howell and Duncan "searched and seized Phillips without reasonable suspicion or probable cause, thereby depriving Phillips of his [constitutional] rights," and did so "pursuant to a policy or custom of the City." Doc. 1 at 12. Officers Howell and Duncan argue that they are entitled to summary judgment on that claim because they had probable cause to arrest Phillips for multiple offenses.

Phillips disagrees, contending that the officers lacked probable cause to arrest him because Officers "Duncan and Howell caused the events to transpire by not deescalating the incident." Doc. 53 at 16. But failure to deescalate is not a *per se* constitutional violation, and video footage of the arrest shows that the officers had probable cause to arrest Phillips for violating Alabama's disorderly conduct statute. As a result, the individual officers and the City of Hanceville are entitled to summary judgment as a matter of law on Phillips' false arrest claim.

**1.    Officers Howell and Duncan had probable cause to arrest Phillips for disorderly conduct.**

The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures." U.S. CONST. AMEND. IV. One such unreasonable seizure is false arrest, in which "[a]n officer violates a person's Fourth Amendment right against unreasonable seizures" by "arrest[ing] that person without probable cause

to make the arrest." *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023).

Probable cause comes in two flavors: actual and arguable. Actual probable cause

exists where "a reasonable officer could conclude . . . that there was a substantial

chance of criminal activity." *Id.* (citation omitted). Arguable probable cause exists

where "a reasonable officer, looking at the entire legal landscape at the time of the

arrests, could have interpreted the law as permitting the arrests." *Id.* (citation

omitted).

Either way, Officers Howell and Duncan had probable cause to arrest

Phillips. First, the evidence shows that there was probable cause to arrest Phillips

for violating Alabama's disorderly conduct law. In Alabama, "[a] person commits

the crime of disorderly conduct if, with the intent to cause public inconvenience,

annoyance, or alarm, or recklessly creating a risk thereof, he:

> (1) Engages in fighting or in violent tumultuous or threatening behavior.
> (2) Makes unreasonable noise.
> (3) In a public place uses abusive or obscene language or makes an
> obscene gesture.
> (4) Without lawful authority, disturbs any lawful assembly or
> meeting of persons.
> (5) Obstructs vehicular or pedestrian traffic, or a transportation
> facility.
> (6) Congregates with other persons in a public place and refuses to
> comply with a lawful order of law enforcement to disperse.

Ala. Code § 13A-11-7 (1975).

Plaintiffs have "the burden of demonstrating the absence of probable cause." *Davis v. City of Apopka*, 78 F.4th 1326, 1339 (11th Cir. 2023). But Phillips has failed to do so here, mainly because the video footage of Phillips' arrest directly supports the officers' claim that Phillips violated numerous provisions of the disorderly conduct statute:

- Phillips "engag[ed] in . . . threatening behavior," § 13A-11-7(1), when he turned aggressively towards Officer Duncan with closed fists while being escorted out of the building. *See Zann v. Whidby*, 904 F. Supp. 2d 1229, 1242 (N.D. Ala. 2012), *aff'd*, 525 F. App'x 924 (11th Cir. 2013) (holding that probable cause existed under § 13A-11-7(1) where plaintiff "pushed away from" deputy attempting a search or arrest; *Davis v. Purcell*, 2014 WL 988596, at *10 (N.D. Ala.) (finding that officers had probable cause where plaintiff "entered the [emergency room] without being cleared through the metal detector, a knife was produced," and raised his hand towards the officer who confronted him).

- Phillips "ma[de] unreasonable noise," § 13A-11-7(2) by loudly shouting at Duncan and Howell. The Alabama Court of Criminal Appeals has affirmed a conviction under this provision in nearly identical circumstances. *Hutchins v. City of Alexander City*, 822 So. 2d 459, 462 (Ala. Crim. App. 2000) (defendant charged with disorderly conduct for loud screaming inside a police station); *see also Windham v. City of Fairhope*, 597 F. App'x 1068, 1072 (11th Cir. 2015) (finding arguable probable cause where plaintiff "repeatedly yelled at the officers . . . on a busy road"); *Fuqua v. Hess*, 2019 WL 450835, at *8 (N.D. Ala.) (collecting cases).

- Phillips "use[d] abusive or obscene language" in public, § 13A-11-7(3), when he "cursed loudly and used abusive language in the presence of several police officers at [a] police station. " *Powell v. State*, 796 So. 2d 404, 425 (Ala. Crim. App. 1999), *aff'd sub nom. Ex parte Powell*, 796 So. 2d 434 (Ala. 2001) (affirming the existence of probable cause for

arrest under § 13A-11-7(3) where arrestee called police "motherfuckers" and "punk-ass").

Defendants also argue that Phillips "refuse[d] to comply with a lawful order of law enforcement to disperse," § 13A-11-7(6), when he disobeyed repeated orders to exit the police station. But that provision of the statute requires both refusal to comply *and* "congregat[ing] with other person[s] in a public place," which does not describe the circumstances of Phillips' arrest.

Alternatively, the officers had probable cause to arrest Phillips for second-degree trespassing. Under Alabama law, "[a] person is guilty of criminal trespass in the second degree if he knowingly enters or remains unlawfully in a building or upon real property which is fenced or enclosed in a manner designed to exclude intruders." Ala. Code § 13A-7-3 (1975). The video evidence shows that Phillips repeatedly refused to obey lawful orders to exit a restricted area, which gave Officers Duncan and Howell actual probable cause to arrest him for trespassing.

Because the evidence shows that "a reasonable officer could conclude . . . that there was a substantial chance" Phillips was violating either Alabama's disorderly conduct or second-degree trespassing statutes, Officers Duncan and Howell are entitled to qualified immunity from Phillips' false arrest claim. *Garcia*, 75 F.4th at 1186.

14

### 2. *The City of Hanceville is not subject to municipal liability.*

Phillips' false arrest claim also contains a municipal liability claim against the City of Hanceville, but the City is entitled to summary judgment on that claim because there was no underlying constitutional violation.

A municipality may be sued under § 1983 for constitutional violations committed by its employees. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978). But a municipality is not liable solely because it employs a tortfeasor. *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). Indeed, the fact that a plaintiff may have suffered a deprivation of constitutional rights as the result of a municipal employee's actions is not enough to create municipal liability. *Bd. of Cnty. Com'rs v. Brown*, 520 U.S. 397, 403 (1997).

Rather, for a plaintiff "to impose municipal liability under § 1983, a plaintiff must allege facts showing: '(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *Gurrera v. Palm Beach Cnty. Sheriff's Off.*, 657 F. App'x 886, 893 (11th Cir. 2016) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).

That first requirement is crucial—municipal liability cannot exist without "an underlying constitutional violation." *Id.* The City is entitled to summary judgment on Phillips' false arrest claim because "[t]here can be no policy-based

liability or supervisory liability when there is no underlying constitutional violation." *Knight*, 856 F.3d at 821.

Further, Phillips has failed to satisfy *Monell*'s policy or custom requirement. A plaintiff seeking municipal liability under § 1983 must show either (1) a formal policy or (2) a "'custom' that has not been formally approved by an appropriate decisionmaker . . . so widespread [within the municipality] as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (citing *Monell*, 436 U.S. at 690-91).

Yet Phillips has provided no evidence of a formal unconstitutional policy or widespread informal custom supported by "evidence of prior constitutional violations or false arrests involving [Alabama's] disorderly conduct statute." *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998). And the City would still prevail even if Phillips had provided sufficient evidence of a custom or policy, because when "a person has suffered no constitutional injury at the hands of the individual police officer[s], the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

## C.    Defendants Are Entitled to Summary Judgment on Phillips' Retaliatory Arrest Claim

The Court next addresses Phillips' retaliatory arrest claim in Count III, since it's derivative of Count I's false arrest claim. Phillips alleges that "Duncan,

Howell, and Hadder . . . assaulted and seized Phillips without reasonable suspicion or probable cause, in retaliation for Phillips's exercise of his First Amendment rights (his statement that he was going to file a complaint) thereby depriving Phillips of his rights under the First Amendment," and did so "pursuant to a policy or custom of the City." Doc. 1 at 13-14.

There are three requirements to show a First Amendment retaliation claim: "(1) [plaintiff] engaged in constitutionally protected speech . . . (2) the defendant's retaliatory conduct adversely affected that protected speech . . . and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019). But there's also threshold requirement for First Amendment retaliatory arrest claims—a plaintiff "must [also] plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). Because there *was* probable cause to arrest Phillips, that requirement is fatal to Phillips' retaliatory arrest claim.

Furthermore, the video evidence shows, and Phillips does not contest, that Deputy Chief Hadder was not present at his arrest, so the retaliatory arrest claim against Hadder fails as a matter of fact. And just as with Count I, the City is entitled to summary judgment because "[t]here can be no policy-based liability or supervisory liability when there is no underlying constitutional violation." *Knight*,

856 F.3d at 821. As a result, all Defendants are entitled to summary judgment on Count III.

### D.    Defendants Are Entitled to Summary Judgment on Phillips' Excessive Force Claim

Finally, Count II of Phillips' Complaint alleges that "Duncan, Howell and Hadder, acting under color of law . . . assaulted and battered Phillips, thereby depriving Phillips of his [constitutional] right . . . to be free from excessive force," and did so "pursuant to a policy or custom of the City." Doc. 1 at 13.

First, the City argues that they are entitled to summary judgment on Phillips' excessive force claim because he did not address their defenses in his response. Indeed, Phillips' response to the motions for summary judgment contains no legal or factual arguments against the City's qualified immunity defense.[4] For that reason alone, the City is entitled to summary judgment on Count II. *See Ajomale v. Quicken Loans, Inc.*, 860 F. App'x 670, 671 (11th Cir. 2021) (holding that "[i]f a party fails to adequately brief a claim in responding to a motion for summary judgment, [courts] will consider that claim to have been abandoned."); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (holding that "[f]ailure to" raise

---

[4] Phillips suggests an alternate theory of municipal liability under Ala. Code § 11-47-190, which allows recovery for injuries resulting from the "neglect, carelessness, or unskillfulness" of a municipal employee. That statute is irrelevant to the City's *Monell* liability. Even if it were relevant, cities are immune from liability for intentional conduct under that statute. *Fowler v. Meeks*, 569 F. App'x 705, 708 (11th Cir. 2014). That includes "deliberate actions akin to intentional torts" like those alleged here. *Id.*

genuine issues of material fact to counter an assertion of qualified immunity "may result in waiver or abandonment of the issue.")

But even if that were not the case, the City (and all other Defendants) would still be entitled to summary judgment. There is no evidence that Duncan and Howell's use of force rose to the level of a constitutional violation. Nor do Phillips' allegations that Deputy Chief Hadder shouted at, spit on, and grabbed him by the neck during the booking process—if true—rise to the level of a constitutional violation. And without an underlying constitutional violation, the City cannot be held liable.

The Fourth Amendment's protections from "unreasonable . . . seizures" include a right to be free from excessive force during an arrest. *Graham*, 490 U.S. at 394. As in most Fourth Amendment analyses, the keystone of any inquiry into a use of force is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (citation omitted).  As a result, an objectively reasonable use of force is not excessive, and therefore does not violate the Constitution. *Id.*

But courts "cannot apply [the reasonableness] standard mechanically." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Rather, the reasonableness of the force depends on "the facts and circumstances of each particular case," and

requires analyzing the "totality of the circumstances," with a particular focus on "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

### 1.    *Officers Duncan and Howell did not use excessive force.*

Phillips has submitted an affidavit in which he swears that Officers Duncan and Howell "put [him] in a choke hold," "pull[ed] him to the ground very aggressively," and "forcefully grabb[ed] his neck and on top of his back." Doc. 41-1 at 4. Phillips then alleges that the officers "shoved [him] back and forward" before they "choked and slammed [him] to the ground." *Id.* Phillips also says the officers then "forcefully jump[ed] on his back" and "slamm[ed his] face to the ground with their knees in [Phillips'] groin while" Officer Duncan "was holding [Phillips'] neck with his arm." *Id.* Finally, Phillips alleges that Officer Howell "push[ed]" Phillips' "head against the wall forcefully." *Id.* at 4-5.

Even so, Officers Duncan and Howell are entitled to summary judgment on this claim, because the video footage shows that the officers use of force was reasonable. *See Scott v. Harris*, 707 F.3d 1276, 1284 (11th Cir. 2013) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

First, neither the force described by Phillips or visible in the security footage automatically rises to an excessive level, since "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and even a "typical arrest involves some force and injury." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (citing *Graham*, 390 U.S. at 394).

Second, the force used during Phillips' arrest was *de minimis*, and therefore did not violate the Fourth Amendment. An excessive force claim cannot survive based on "the application of *de minimis* force, without more." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). For one, Phillips claims his "neck and back were severely injured" by the arrest but provides no medical evidence supporting that claim. Doc. 41-1 at 5. Given that, the Court can only conclude that Phillips' injuries were minimal, and thus that the use of force was not excessive. *See Rodriguez*, 280 F.3d at 1352 (holding that painful handcuffing "is not excessive force . . . where the resulting injuries are minimal" and collecting cases).

More importantly, the video evidence shows that Phillips was resisting arrest so effectively that he managed to get back on his feet despite the best efforts of three police officers. Given Phillips' active resistance and the fact that he was not handcuffed for most of the arrest, none of the force deployed during the arrest rose to the level of excessive force. *Gomez v. United States*, 601 F. App'x 841, 850 (11th

Cir. 2015). Indeed, constitutionally acceptable, *de minimis* uses of force on an unhandcuffed suspect include "grabb[ing] an unhandcuffed plaintiff from behind by the shoulder and wrist, thr[owing] the plaintiff against a van," and "push[ing] the plaintiff's head into the side of [a] van," as well as "slamm[ing]" an "unhandcuffed plaintiff against a wall," and "plac[ing] the unhandcuffed plaintiff in a chokehold." *Id.*

Finally, although disorderly conduct and trespassing are not severe crimes, Phillips combativeness posed a threat to the safety of the officers, and he was resisting arrest. *Graham*, 490 U.S. at 396. As a result, Duncan and Howell's use of force during Phillips' arrest was objectively reasonable.

## 2. *Even taking Phillips' allegations as true, Deputy Chief Hadder's actions did not constitute excessive force.*

While Deputy Chief Hadder argues that summary judgment is proper because there is no evidence that any force was used, let alone excessive force, Phillips uses the "he-said, he-said" nature of the evidence on this claim to make the opposite legal argument. In Phillips' view, Hadder is not entitled to summary judgment because there's a dispute of material fact: whether the alleged use of force even happened. *Id.* at 20.

To be sure, there is no video evidence of what happened during the booking process, only warring declarations and testimony. And "where the plaintiff and officers submit conflicting affidavits as to the facts surrounding the arrest, the court

must the credit the plaintiff's version as truthful when the officers move for summary judgment on qualified immunity grounds." *Brown v. Head*, 228 F. Supp. 2d 1324, 1329 (M.D. Ala. 2002) (summarizing the holding of *Webb v. Ethridge*, 849 F.2d 546, 549-50 (11th Cir.1988)).

In any event, the mere existence of these disputed facts is not enough for Phillips to overcome summary judgment in Hadder's favor. Although a dispute of material fact is usually sufficient to deny summary judgment, "factual disputes" in § 1983 cases "do not preclude a grant of summary judgment premised on a defendant's qualified immunity if the legal norms allegedly violated were not clearly established at the time of the challenged actions." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988). In such cases, summary judgment is "appropriate as a matter of law" *despite* "factual disputes . . . regarding the defendant's conduct." *Id.* at 1564-65.

That's the case here. The "legal norms allegedly violated" cannot have been "clearly established at the time" for the simple reason that even if Phillips' allegations are true, they don't rise to the level of excessive force. *Id.* at 1564; *see Nolin*, 207 F.3d at 1257 (holding that *de minimis* force is not excessive).

According to Phillips, he stated that his arrest was "not right" during the booking process, and that Deputy Chief Hadder then "scream[ed]" in his face, "spit[] dip in his face/eyes," and "dragg[ed]" Phillips "by the neck from the booking

23

office . . . into [his jail cell." Doc. 41-1 at 5-6. But spitting in an arrestee's face is not excessive force. *See Hilton v. Sec'y for Dept. of Corr*., 2005 WL 3802979, at *4 (11th Cir. Nov. 1, 2005) (affirming district court's dismissal of excessive force claim against officer for spitting tobacco in plaintiff's face).

Neither is dragging an arrestee by the neck—in fact, the Eleventh Circuit has "repeatedly held that a push or shove that causes pain and necessitates no or merely minor medical treatment is not a violation of the Fourth Amendment, even where the arrestee was handcuffed and no further force was necessary." *McCall v. Crosthwait*, 336 F. App'x 871, 872-73 (11th Cir. 2009) (affirming district court's grant of qualified immunity to officer who "pushed" the plaintiff "out of the jail's elevator, causing him to hit the partially open steel cell door and fall against the plexiglass window."); *see also Gomez v. United States*, 601 F. App'x 841, 843 (11th Cir. 2015) (finding *de minimis* force where officer "grabbed" an unhandcuffed individual "by the neck, choked him, and slammed him against the passenger side of the vehicle."); *Ashley v. Bennett*, 2022 WL 15174840, at *3 (11th Cir.) (finding that "roughly seizing" plaintiff's elbow, yanking him into the air, and dragging him to the patrol vehicle, was only *de minimis* force."). Because the facts alleged by Phillips do not rise to the level of excessive force, Hadder is entitled to summary judgment as a matter of law.

### 3. *The City is not liable for the alleged use of excessive force.*

The City is entitled to summary judgment on Phillips' excessive force claim in Count II for the same reason it is entitled to summary judgment on Counts I and III—because there is no underlying constitutional violation, there can be no municipal liability.

## IV. OTHER PENDING MOTIONS

First, Phillips has moved for the sanction of an adverse inference—that footage of the interaction between Deputy Chief Hadder during booking "if produced, would have been adverse to Defendants and favorable to Plaintiff['s] claims." Doc. 59-1 at 1. But there is no evidence that Defendants improperly hid or destroyed such footage. More importantly, even if the video matched Phillips' allegations, this Court has already ruled that those allegations do not rise to the level of excessive force, and therefore such an inference would be improper.

Furthermore, the sanctions motion must be denied because Phillips' counsel failed to comply with the parties' own discovery plan. According to Defendants, "the City was prepared to put up a rule 30(b)(6) witness who could have explained at deposition that (a) the [recording] system plaintiff's counsel observed was not the system which would have recorded plaintiff's booking; and (b) the system actually recorded plaintiff's booking writes-over footage not otherwise preserved each month." Doc. 60 at 4-5. But Phillips' counsel cancelled the 30(b)(6) deposition 15 minutes before it was scheduled to begin "due to 'unforeseen

circumstances.'" Doc. 60 at 5. After that, "plaintiff failed to provide written questions to defendants' 30(b)(6) witness prior to the extended discovery cut-off period—which, again, was requested by plaintiff's counsel, in part, so they could depose a City representative about the system." *Id.* Phillips' counsel did not dispute this version of events in his reply. Doc. 63. As a result, the Court WILL DENY Phillips' Motion for Sanctions.

Second, because the Court has determined that Defendants' motions for summary judgment are due to be granted and did not consider any of the contested evidence in its decision, the Court will DENY AS MOOT Defendants' Joint Motion to Strike, Doc. 78.

## V.    CONCLUSION

Because there are no remaining disputes of material fact and Defendants are entitled to summary judgment as a matter of law, the Court GRANTS Defendants' motions for summary judgment, Docs. 31, 32. As a result, the case is DISMISSED WITH PREJUDICE, and the Clerk is ORDERED to close the case. Further, Phillips' Motion for Sanctions, Doc. 59, is DENIED, and Defendants' Motion to Strike is DENIED AS MOOT. Doc. 78.

A final judgment will be entered separately.

**DONE** and **ORDERED** this July 8, 2025.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE